# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2002

## STATE OF TENNESSEE v. DARREN A. DEWALT

**Direct Appeal from the Criminal Court for Shelby County**
**No. W98-00077     James C. Beasley, Jr., Judge**

---

**No. W2001-02778-CCA-R3-CD  - Filed December 9, 2002**

---

Defendant, Darren A. Dewalt, appeals as of right from the trial court's order revoking his probation and reinstating his original sentence to be served in the Shelby County Correction Center. Defendant contends that the trial court erred by revoking his probation based upon an unidentified and unsubstantiated laboratory report indicating that Defendant had used drugs in violation of his probation. Based upon a review of the entire record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and JOHN EVERETT WILLIAMS, JJ., joined.

AC Wharton, Jr., Shelby County Public Defender; Garland Erguden, Assistant Public Defender; Phyllis Aluko, Assistant Public Defender; and Marty McAfee, Assistant Public Defender, Memphis, Tennessee, for the appellant, Darren A. Dewalt.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; Karen Cook, Assistant District Attorney General; Scott Gordon, Assistant District Attorney General; and Kevin Rardin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On February 4, 1998, Defendant pled guilty to aggravated burglary, a Class C felony. He was sentenced as a Range I offender to three years, fined $500.00, and placed on probation for the duration of his sentence. As special conditions of his probation, Defendant agreed to pay restitution to the victim, acquire his G.E.D., perform 150 hours of community service, obtain employment, and report daily to the Day Reporting Center until he found employment. In addition, Defendant agreed to obey all laws, communicate with his probation officer as required, and refrain from using narcotic drugs, including marijuana.

A probation violation report was filed on August 15, 2000 alleging that Defendant had violated his probation by failing to (1) report in as required; (2) make payments on his court costs, supervisory fees and restitution; (3) report his arrest for driving without a license; (4) present verification of employment; (5) present verification of G.E.D. class attendance; and (6) complete his required community service. Following a hearing, Defendant was allowed until December 11, 2000 to come into compliance. Thereafter, Defendant was granted several more extensions to give him time to fulfill his obligations until October 19, 2001, when Defendant's probation was revoked.

During this time, Defendant completed his G.E.D. and community service hours. He also made some payments on his financial obligations, but remained significantly in arrears. Defendant was also arrested and convicted a second time for driving without a license. On August 23, 2001, Defendant submitted to an in-house drug screen that tested positive for amphetamines, cocaine, and marijuana. A second in-house drug screen performed on September 20, 2001 tested positive for cocaine and marijuana. Both drug screens were sent to Aegis Analytical Laboratories for analysis, and were returned positive for marijuana and negative for the other drugs.

At Defendant's probation revocation hearing on October 19, 2001, testimony concerning the laboratory reports was introduced over Defendant's objection that the State did not properly lay the foundation for the introduction of the tests. At the conclusion of the hearing, Defendant's probation was revoked.

On appeal, Defendant argues that the trial court erred in basing its decision to revoke Defendant's probation, for the most part, on Defendant's positive drug tests. Specifically, Defendant contends that the State failed either to present the technicians who prepared the drug analyses or show good cause why such persons did not testify, and did not provide any testimony on the types of tests used or the tests' reliability as required by *State v. Wade*, 863 S.W.2d 406 (Tenn. 1993). Accordingly, Defendant asks this Court to reverse the revocation of his probation.

In *Wade*, the Tennessee Supreme Court held that probation may not be revoked solely upon the basis of an unidentified laboratory report, without a showing of good cause as to why the technician preparing the report did not personally appear at the hearing and without proof as to the reliability of the report. *Id.* at 409; *see also State v. Ricker*, 875 S.W.2d 687 (Tenn. Crim. App. 1994). In this instance, Defendant's probation officer testified that she administered two drug screens to Defendant in-house and forwarded the screens to the Aegis Analytical Laboratories for analysis. The laboratory report indicates that the screens tested positive for marijuana. The State did not produce the technician who prepared Defendant's drug analyses nor offer any reason as to why the person was not available to testify at trial. There also was no testimony regarding the reliability of the tests. Based on the record, we conclude that the trial court did not follow the mandates established in *Wade,* and accordingly erred in admitting testimony concerning the laboratory report.

However, unlike the situations in *Wade* and *Ricker*, Defendant's probation in this instance was not revoked solely on the basis of his drug screens. The record shows that Defendant continued

to fall behind on payments for his court costs, supervisory fees, and restitution. Defendant cited his lack of employment as the reason why he was not able to make his payments on a regular basis. The trial court declined to accept this reason. Additionally, Defendant's failure to secure steady employment, in and of itself, was a violation of probation. The trial court had the opportunity to evaluate Defendant's credibility and demeanor at trial. In probation revocation hearings, the credibility of witnesses is left to the trial court's determination. *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) *citing Bledsoe v. State*, 215 Tenn. 553, 387 S.W.2d 811, 814 (1965). The record shows that the trial court inquired into the reasons why Defendant had failed to make his payments, and concluded that Defendant had not made a bona fide effort to reduce his obligations. *See State v. Dye*, 715 S.W.2d 36, 40 (Tenn. 1986).

In addition, Defendant was arrested on January 4, 2001 for driving with a suspended, revoked, or canceled license and violation of the vehicle registration law. He pled guilty, and was sentenced to serve five days. This action constitutes a direct violation of Defendant's agreement to obey all laws. The commission of a crime during probation constitutes sufficient evidence that a violation of probation has occurred. *State v. Gabel*, 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995).

A trial judge is vested with the discretion to revoke a sentence of probation if it determines by the preponderance of the evidence that the conditions of probation have been violated. Tenn. Code Ann. § 40-35-311(e). Accordingly, the trial court's decision will be upheld on appeal unless there has been an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). To find an abuse of discretion in a probation revocation, the record must be void of any substantial evidence that would support the trial court's decision to revoke probation. *Id.; State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1981).

Because there is sufficient evidence that Defendant violated the terms of his probation, the record fully supports the revocation of Defendant's probation.

## CONCLUSION

Based upon a review of the record, we conclude that the trial court did not abuse its discretion in revoking Defendant's probation. The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE